### John Christopher SAWYERS, Petitioner–Appellant,

v.

### James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.

No. 91–6185.

United States Court of Appeals, Fifth Circuit.

March 23, 1993.

Rehearing and Rehearing En Banc Denied April 21, 1993.

Alexander Bunin, Houston, TX (Court-appointed), for Sawyers.

Stephani A. Stelmach, William C. Zapalac, Bob Walt, Asst. Attys. Gen., Dan Morales, Atty. Gen., Austin, TX, for respondent-appellee.

Before POLITZ, Chief Judge, KING, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant, John Christopher Sawyers, was convicted by a jury of capital murder, and sentenced to death. His conviction and sentence were affirmed on direct appeal. Sawyers filed a petition for a writ of habeas corpus in federal district court, pursuant to 28 U.S.C. § 2254 (1988), claiming that (a) the special issues submitted to the sentencing jury did not enable them to give mitigating effect to evidence that he was intoxicated at the time of the offense; and (b) he was denied effective assistance of counsel when his trial attorney advised his relatives that he probably would not receive the death penalty, and therefore they need not testify in his behalf at sentencing. The district court denied Sawyers' petition, holding that both claims failed on the merits, and that Sawyers' mitigation claim was also procedurally barred.

Sawyers requests a certificate of probable cause to appeal the district court's denial of his petition, pursuant to 28 U.S.C. § 2253 (1988). Sawyers argues that the district court's denial of habeas relief was erroneous, because (a) his mitigation claim was not procedurally barred; (b) he was entitled to relief on the merits of his mitigation claim; and (c) he was entitled to an evidentiary hearing to determine whether his trial counsel advised his family not to testify on his behalf. Because Sawyers has not made a substantial showing of denial of his federal rights, we deny his request for a certificate of probable cause to appeal.

## I

Sawyers murdered Ethel Delaney in Houston on February 2, 1983. After his arrest he signed a written statement which recounted the details of the crime:

On Wednesday February 2nd, 1983, I went to Ethel Delaney's house on Ojeman Road. I went there to talk to her to make up my mind whether or not I should steal her car from her and to decide whether or not I should murder her. I decided I was going to murder her.... I went to the kitchen and I grabbed a cast iron skillet from under the stove and went back into the bedroom and hit her on the head with it four times. The skillet broke on the fourth hit, the handle broke on it. Blood started coming out of her head so I assumed she was dying. I took the frying pan back to the kitchen and put it under the stove along with the broken handle.

I went back to the bedroom and found her purse, her car keys were in there with the rings and some money, it was over thirty dollars. I took the purse and left the house closing the door behind me. I took her car and I drove straight to the pawn shop and pawned the rings for $200.00. Then I went and picked up Desma Hejl and Carl Peterson and we went riding around and I had a wreck in the car later that night.

Trial Record, vol. XVIII, at 36 (State's Exhibit 34).[1] Sawyers' statement was introduced at trial, and the jury found him guilty of capital murder. At sentencing the jury answered yes to both special issues, and the trial court sentenced Sawyers to death. On direct appeal the Texas Court of Criminal Appeals affirmed Sawyers' conviction and sentence. *See Sawyers v. State,* 724 S.W.2d 24 (Tex.Crim.App.1986), *overruled on other grounds by Watson v. State,* 762 S.W.2d 591, 599 (Tex.Crim.App. 1988).

In his second application for a writ of habeas corpus in the state courts,[2] Sawyers argued that the sentencing jury was prevented from considering and giving mitigating effect to evidence that he was intoxicated when he killed Ethel Delaney. The primary evidentiary support for that claim consisted of the testimony of two of Sawyers' acquaintances—Desma Hejl and

---

1. The record from Sawyers' trial will be cited as "Trial Record." The record of the habeas proceedings in state court will be cited as "State Habeas Record." The record of the habeas proceedings in federal district court will be cited as "Record on Appeal."

2. Sawyers' first application for a writ of habeas corpus in the state courts was denied by the Court of Criminal Appeals. *See* State Habeas Record, Application No. 16,991–01, at 1.

Chrystal Howard—who saw Sawyers at the Tacoma Car wash on the day of the murder. At trial Hejl testified that, when Sawyers arrived at the car wash, he was "pretty well waxed out," "pretty high," "too hyper to be normal," and "talking faster than normal." According to Hejl, Sawyers said that he had taken Mandrex, "a Mexican qualuden," earlier that day. Howard testified that, when Sawyers arrived at the car wash, "[i]t seemed like he might have been intoxicated or under the influence of something else." The evidence revealed that Sawyers had already murdered Ethel Delaney when he arrived at the car wash. Hejl testified that Sawyers arrived in a new car, and both Hejl and Howard testified that Sawyers showed Howard several rings which he claimed to have received from his ex-wife.

The trial court reviewed Sawyers' habeas application and entered written findings of fact, which stated that

> [T]here was no evidence that [Sawyers] was intoxicated at the time he committed the instant capital murder. At most, the evidence showed that at some time *after* [Sawyers] killed the decedent, he visited friends who believed he was intoxicated or "high." There was no evidence adduced at trial that demonstrated that the instant capital murder was in any way drug-related.

State Habeas Record, Application No. 16,-991–02, at 153–54. The trial court concluded that Sawyers' claim failed on its merits, because "the isolated incident of [Sawyers'] intoxication, sometime after the crime, with no identifiable connection to the capital murder, is not evidence which extenuated the gravity of the crime or reduced [Sawyers'] blameworthiness for the crime." *See id.* at 156. The trial court also concluded that Sawyers' claim was barred because he had failed to preserve it by objecting at trial.

Sawyers also argued in his second state habeas application that he was denied effective assistance of trial counsel, in violation of the Sixth Amendment. Sawyers claimed that his attorneys underestimated the likelihood that he would receive the death penalty, and consequently failed to call his family to testify in his behalf at trial. Sawyers presented the affidavits of several of his relatives, who stated that they would have appeared at Sawyers' trial if his lawyer had not advised them not to, and would have testified to certain mitigating facts, such as Sawyers' history of drug abuse and his service in the navy.

The trial court's written findings of fact stated that Sawyers' counsel never underestimated the probability that Sawyers would be sentenced to death; neither did counsel advise Sawyers' family that it was unlikely that he would receive the death penalty, or that it was unnecessary for them to appear at trial. The trial court further found that counsel made a tactical decision not to introduce evidence of Sawyers' substance abuse and naval service, because that evidence was not likely to be regarded by the jury as mitigating. The trial court concluded that Sawyers received effective assistance of counsel at trial.

The trial court recommended that the Court of Criminal Appeals deny relief. The Court of Criminal Appeals denied Sawyers' application with a written order, stating only that "the trial court's findings and conclusions are supported by the record."

Sawyers then filed his petition for a writ of habeas corpus in federal district court. Sawyers again argued that, at the punishment phase of his trial, the jury was prevented from considering and giving mitigating effect to evidence that he was intoxicated at the time of the offense. The district court rejected Sawyers' claim on the grounds that it was procedurally barred. In the alternative, the district court rejected Sawyers' claim on the merits, because (1) the jury could give effect to any evidence of intoxication via the statutory special issues submitted to the jury at sentencing, and (2) there was no evidence to show that Sawyers was intoxicated at the time of the offense. Sawyers also claimed that his trial counsel was ineffective for failing to call his family to testify at trial. The district court rejected this claim on its merits. The district court denied Sawyers' petition for a writ of habeas

corpus, and also denied a certificate of probable cause to appeal.

Sawyers is before this Court seeking a certificate of probable cause to appeal the district court's denial of his petition. Sawyers argues that the district court erred by (a) rejecting his mitigating evidence claim—on the basis of procedural default and on the merits; and (b) denying him an evidentiary hearing regarding his ineffective assistance claim. We granted a stay of execution, pending our decision on Sawyers' application for a certificate of probable cause to appeal.

## II

■■■ "In a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court, an appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of probable cause." Fed.R.App.P. 22(b); *see also* 28 U.S.C. § 2253 (1988).[3] A certificate of probable cause to appeal will not be granted unless the petitioner makes a substantial showing of the denial of a federal right. *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (citing *Stewart v. Beto*, 454 F.2d 268, 270 n. 2 (5th Cir.1971), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)). To make such a showing, "the petitioner need not show that he should prevail on the merits.... Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.' " *Id.* at 893 n. 4, 103 S.Ct. at 3394 n. 4.

## A

### (i)

Sawyers claims that he was intoxicated when he murdered Ethyl Delaney. He further claims that the two special issues submitted to the jury at sentencing, pursuant to Tex.Code Crim.Proc.Ann. art. 37.071(b) (Vernon 1981), did not permit the jury to consider or give mitigating effect to evidence of his intoxication.

■■■ "[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (citation omitted). Therefore, a sentencing jury in a capital murder case may not be prevented from considering any mitigating evidence presented by the defendant which relates to the defendant's character or the circumstances of the offense. *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978).

In Texas, at the time of Sawyers' trial, defendants convicted of capital murder were sentenced either to death or to life imprisonment, depending on the sentencing jury's answers to certain special issues. *See* Tex.Code Crim.Proc.Ann. art. 37.071(b) (Vernon 1981).[4] At the punishment phase of Sawyers' trial, the court submitted the following issues to the jury:

### Issue No. 1

Do you find from the evidence beyond a reasonable doubt whether the conduct of the defendant, John Christopher Saw-

---

**3.** "If ... a request [for a certificate of probable cause to appeal] is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate." Fed.R.App.P. 22(b); *see also Application of Burwell*, 350 U.S. 521, 522, 76 S.Ct. 539, 540, 100 L.Ed. 666 (1956) (holding that the court of appeals may not decline to hear a request addressed to the whole court, even though 28 U.S.C. § 2253 only authorizes a single circuit judge to issue a certificate of probable cause to appeal).

**4.** The Texas death penalty statute has undergone major revisions since Sawyers' trial. *See* Tex. Code Crim.Proc.Ann. art. 37.071 (Vernon Supp. 1993).

yers, that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

### Issue No. 2

Do you find from the evidence beyond a reasonable doubt whether there is a probability that the defendant, John Christopher Sawyers, would commit criminal acts of violence that would constitute a continuing threat to society? *See id.* Because the jury answered yes to both issues, the trial judge sentenced Sawyers to death, as directed by the Texas Code of Criminal Procedure. *See id.* art. 37.071(e) ("If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death.").

The Supreme Court upheld this capital sentencing scheme in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), in part because the Texas Court of Criminal Appeals had indicated that the special issues would be interpreted broadly enough to permit consideration of any and all mitigating factors introduced by the defendant.[5] However, in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Supreme Court held that, in some cases, Texas' special issues would not enable the jury to give effect to all mitigating evidence offered by the defendant.

The Supreme Court held that Johnny Paul Penry's mental retardation and abused childhood, although relevant to the deliberateness of his actions, also had relevance to his moral culpability beyond the scope of the deliberateness question. *See id.* at 322–23, 109 S.Ct. at 2949.[6] Therefore, the "deliberateness" issue did not necessarily provide the jury with "a vehicle for expressing its 'reasoned moral response' to" Penry's evidence of retardation and abuse. *See id.* at 322–24, 328–30, 109 S.Ct. at 2949, 2952. The special issue concerning future acts of criminal violence was even less helpful to Penry, because his retardation and abused childhood operated only as aggravating factors, tending to show that he could neither learn from his errors nor conform his actions to the law. *See id.* at 322–24, 109 S.Ct. at 2949. Therefore, Penry was entitled to have the jury instructed that it could give mitigating effect to evidence of his retardation and abused childhood by declining to impose the death penalty. *See id.* at 328–30, 109 S.Ct. at 2952.

Relying on the Supreme Court's decision in *Penry*, Sawyers argued in his petition for writ of habeas corpus, and argues before this Court, that he was intoxicated at the time of his offense, and that the two special issues submitted to the jury at sentencing did not enable the jury to give mitigating effect to evidence of his intoxication.[7] The district court rejected this ar-

---

**5.** The Court stated in *Jurek:*

[T]he constitutionality of the Texas procedures turns on whether the enumerated questions allow consideration of particularized mitigating factors.... The Texas Court of Criminal Appeals ... indicated that it will interpret [the special issue concerning future criminal acts of violence] so as to allow a defendant to bring to the jury's attention whatever mitigating circumstances he may be able to show....

*Jurek*, 428 U.S. at 272, 96 S.Ct. at 2956.

**6.** The Court noted that:

Personal culpability is not solely a function of a defendant's capacity to act "deliberately." A rational juror at the penalty phase of the trial could have concluded, in light of Penry's confession, that he deliberately killed Pamela Carpenter to escape detection. Because Penry was mentally retarded, however, and thus less able than a normal adult to control his impul-

ses or to evaluate the consequences of his conduct, and because of his history of childhood abuse, that same juror could also conclude that Penry was less morally "culpable than defendants who have no such excuse," but who acted "deliberately."

*Penry*, 492 U.S. at 322–23, 109 S.Ct. at 2949.

**7.** An additional aspect of Sawyers' claim requires only brief discussion. Sawyers has suggested, without elaborating, that Texas law unconstitutionally prevented him from presenting mitigating evidence of voluntary intoxication at trial. *See* Record on Appeal at 28, 35. That argument is without merit, because the reasonable tactical decisions of Sawyers' trial counsel, rather than Texas law, prevented the introduction of additional evidence of voluntary intoxication. Sawyers does not point to any ruling by the trial court which excluded evidence of voluntary intoxication. The only evidence of that sort which Sawyers has identified, but which

gument on two alternative grounds. We will consider each in turn.

### (ii)

The district court held that Sawyers' *Penry* claim was procedurally barred, because Sawyers failed to preserve the alleged error in the state courts. *See* Record on Appeal at 76. Sawyers argues that this was error, in light of the Texas Court of Criminal Appeals' opinions in *Black v. State*, 816 S.W.2d 350 (Tex.Crim.App.1991) and *Selvage v. Collins*, 816 S.W.2d 390 (Tex.Crim.App.1991). We agree that the district court erred.

▉▉▉ On application for the writ of habeas corpus, federal courts will not review a state court's holding on a federal law claim—such as Sawyers' *Penry* claim—if that holding rests upon a state law ground which is both independent of the merits of the federal claim and adequate to support the state court's judgment. *Harris v. Reed*, 489 U.S. 255, 260–63, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989). Consequently, "[w]hen a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, — U.S. —, —, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87–88, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977)); *Murray v. Carrier*, 477 U.S. 478, 485–92, 106 S.Ct. 2639, 2643–48, 91 L.Ed.2d 397 (1986). Furthermore, where a state court finds that a federal claim is procedurally barred, but goes on to reach the merits of that claim in the alternative, the state court's reliance on the procedural default still constitutes an independent and adequate state ground which bars federal habeas review.[8]

When it is unclear whether the state court's judgment rests on state procedural grounds or on the merits of the federal claim, the basis for the state court judgment is identified by applying a presumption fashioned by the Supreme Court in *Ylst v. Nunnemaker*:

> [W]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman* [*v. Thompson*, — U.S. —, —, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991)], we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

*Ylst*, — U.S. at —, 111 S.Ct. at 2594. This presumption is rebuttable, however:

> [S]trong evidence can refute it. It might be shown, for example, that even though the last reasoned state-court opinion had relied upon a procedural default, a retro-

---

was not developed at trial, consists of the affidavits of Sawyers' relatives and a family friend. *See* State Habeas Record, Application No. 16,-991–02, at 20–33. The affiants indicated that Sawyers had a history of drug and alcohol abuse. *See id.* at 21, 25, 28, 32. However, that evidence was not excluded from trial on account of Texas law. Rather, Sawyers' trial lawyers "consciously refrained from introducing evidence of [Sawyers'] past drug abuse since they reasonably believed that general evidence of [Sawyers'] drug abuse would not be considered mitigating by a jury *regardless* of any special issue or instruction allowing for its consideration." *See id.* at 152 (trial court's findings of fact). Because Sawyers' trial attorneys' tactical decision did not amount to ineffective assistance of counsel, *see infra* II.B., Sawyers is not entitled to relief because evidence of his past substance abuse was not admitted at trial.

8. The Court noted in *Harris*:

 "A state court remains free ... to rely on a state procedural bar and thereby to foreclose federal habeas review.... Moreover, a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."

 *Harris*, 489 U.S. at 264 and n. 10, 109 S.Ct. at 1044 and n. 10.

active change in law had eliminated that ground as a basis of decision, and the court which issued the later unexplained order had directed extensive briefing limited to the merits of the federal claim. *Id.* —— U.S. at ——, 111 S.Ct. at 2595.

■ Sawyers applied to the state courts for a writ of habeas corpus. His application was reviewed by the trial court, which entered findings of fact and conclusions of law. The trial court concluded that Sawyers was "procedurally barred from advancing his [*Penry* claim] as he lodged no objection at the time of trial that the Texas capital sentencing scheme, as applied to him, unconstitutionally precluded him from introducing, and/or the jury from considering, the mitigating evidence alleged." *See* State Habeas Record, Application No. 16,-991–02, at 155. The trial court reached the merits of Sawyers' *Penry* claim only in the alternative. *See id.* at 155–56. The trial court recommended that the Texas Court of Criminal Appeals deny relief. *See id.* at 156. The Court of Criminal Appeals followed the trial court's recommendation and denied Sawyers' application, stating only that "the trial court's findings and conclusions are supported by the record." *See* Order, *Ex parte John Christopher Sawyers,* Writ No. 16,991–02 (June 5, 1991) (loose documents).

Because the Court of Criminal Appeals did not point to specific reasons for denying Sawyers' application, we would ordinarily follow the presumption set out in *Ylst* and regard the Court of Criminal Appeals as adopting the reasoning of the trial court—that Sawyers' *Penry* claim was procedurally barred and, in the alternative, also failed on its merits. *See Ylst,* —— U.S.

at ——, 111 S.Ct. at 2594. If we regarded the Court of Criminal Appeals as having adopted both of the trial court's grounds for denying relief, federal review would be barred. *See Harris,* 489 U.S. at 264 and n. 10, 109 S.Ct. at 1044 and n. 10 ("[T]he adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."). However, there is strong evidence that the Court of Criminal Appeals did not rely on procedural default, and instead rejected Sawyers' *Penry* claim on its merits alone.

One week prior to the Court of Criminal Appeals' denial of Sawyers' writ application, that court decided *Selvage v. Collins,* 816 S.W.2d 390 (Tex.Crim.App.1991). *Selvage* established that review of a *Penry* claim in the Texas courts is not barred for failure to object at trial, so long as the trial occurred before the *Penry* decision was issued.[9] The *Selvage* decision constitutes strong evidence that the Court of Criminal Appeals did not rely on procedural default in denying Sawyers' application for the writ of habeas corpus. Sawyers' case was controlled by the Court of Criminal Appeals' week-old decision in *Selvage,*[10] and denial of Sawyers' application on the basis of procedural default would have been in direct conflict with that precedent. Consequently, the *Selvage* decision rebuts the *Ylst* presumption and supports our finding that the Court of Criminal Appeals denied Sawyers' writ application on its merits, rather than on account of a procedural bar. *Cf. Caswell v. Ryan,* 953 F.2d 853, 860 (3rd Cir.1992) (finding that "the more plausible interpretation of the Pennsylvania Supreme

9. Selvage was sentenced to death for capital murder, and petitioned for a writ of habeas corpus, claiming that the Texas special issues had not permitted the jury to give effect to his mitigating evidence. *See Selvage,* 816 S.W.2d at 391. Although Selvage failed to object at trial, the Court of Criminal Appeals held that Selvage's claim was not procedurally barred. *See id.* at 392. Applying the reasoning of Judge Campbell's concurrence in *Black v. State,* 816 S.W.2d 350 (Tex.Crim.App.1991), the Court of Criminal Appeals held that Selvage's claim asserted a right which was not recognized until

the Supreme Court's opinion in *Penry,* issued several years after Selvage was sentenced. *See Selvage,* 816 S.W.2d at 392. Therefore, the Court of Criminal Appeals did not regard Selvage as having waived his claim by failing to raise it at trial. *See id.*

10. Like Selvage, Sawyers was sentenced years before the *Penry* decision was issued. Sawyers was sentenced on May 25, 1983. *See* Trial Record, vol. XVII, at 2, 37. *Penry* was decided June 26, 1989. *See Penry,* 492 U.S. at 302, 109 S.Ct. at 2934.

Court's denial of an untimely petition for review is that it deemed the petition to be procedurally barred" where "the Pennsylvania Supreme Court does not ordinarily waive this type of procedural default"), *cert. denied,* —— U.S. ——, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). Therefore, the district court erred in holding that federal habeas review of Sawyers' *Penry* claim was barred by state law procedural default.[11] *See Ylst,* —— U.S. at ——, 111 S.Ct. at 2593 ("State procedural bars are not immortal.... If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available.").

(iii)

■ The district court found that Sawyers' *Penry* claim lacked factual support:

11. Director Collins argues that federal habeas review of Sawyers' *Penry* claim was barred because Sawyers failed to present mitigating evidence at trial. *See* Brief for Collins at 8 n. 3 (citing *Ex parte Goodman,* 816 S.W.2d 383, 386 (Tex.Crim.App.1991)). Collins appears to rely upon footnote number six of *Ex parte Goodman,* where the Court of Criminal Appeals declined to consider mitigating evidence that was presented for the first time in a post-conviction proceeding. *See Goodman,* 816 S.W.2d at 386 n. 6. Collins' reliance on *Ex parte Goodman* is misplaced. Sawyers' *Penry* argument is concerned primarily with evidence that was adduced at trial. *See infra* II.A.(iii). Therefore, the Court of Criminal Appeals' holding in *Goodman* is inapposite, and Collins' argument is without merit.

12. In his written confession Sawyers stated that, after killing Ethel Delaney, he "drove straight to the pawn shop and pawned the rings for $200.00." *See* Trial Record, vol. XVIII, at 36 (State's Exhibit 34). However, Desma Hejl and Chrystal Howard testified that Sawyers still had the rings in his possession when he arrived at the Tacoma Car Wash. *See id.,* vol. XIII, at 69, 95. That evidence might indicate that Sawyers drove straight from the scene of the murder to the car wash, and then to the pawn shop. However, even if Sawyers drove straight from Ethel Delaney's house to the car wash, it does not follow that the murder and Sawyers' visit to the car wash were in such close proximity that Sawyers must have been intoxicated at the time of the offense. No evidence was introduced to indicate that the time required for Sawyers to travel from Ethel Delaney's home to the Tacoma Car Wash was so brief that Sawyers could not have ingested drugs or alcohol in the interim.

"There was no evidence that Sawyers was ... intoxicated at the time of the murder. There was testimony only that he was 'waxed out' and 'high' sometime after the murder and that he had been taking Mandrex tablets, a 'Mexican qualude,' sometime that day." Record on Appeal at 73. We agree. The testimony of Desma Hejl and Chrystal Howard clearly indicates that Sawyers was intoxicated when he arrived at the Tacoma Car Wash. *See* Trial Record, vol. XIII, at 71, 96, 107. However, absent some direct evidence that Sawyers was intoxicated at the moment of the offense, or that he arrived at the car wash so soon after the offense that he did not have time to become intoxicated in the interim,[12] there is no evidence to support Sawyers' *Penry* claim. Consequently, the district court properly rejected that claim.[13] *See Barnard v. Collins,* 958 F.2d 634, 638 (5th

Consequently, this case is analogous to *Barnard v. Collins,* 958 F.2d 634 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993). In *Barnard,* testimony at trial showed that Barnard had been severely beaten over the head with a tire iron several months before he committed the offense. *See id.* at 638. Testimony also revealed that his behavior had changed as a result of his injuries, and that he had once sought a psychiatric examination following the incident. *See id.* However, we rejected Barnard's claim that his injuries resulted in a mental impairment which could not be given mitigating effect under the special issues. *See id.* Although the fact of Barnard's injuries lent some support to the conclusion that he suffered from a mental disability at the time of his offense, that conclusion depended largely on speculation. *See id.* The same is true of Sawyers' *Penry* claim. Evidence of Sawyers' intoxication at the car wash, in conjunction with evidence that he drove "straight" there from the scene of the offense, may lend a shred of support to the assertion that he was intoxicated at the time of the murder. However, because that assertion depends largely on speculation, in light of *Barnard* we agree that Sawyers' *Penry* claim fails for lack of evidentiary support.

13. The district court also could have rejected Sawyers' *Penry* claim on the basis of the trial court's findings of fact. In response to Sawyers' second state habeas application, the trial court entered written findings to the effect that

[T]here was no evidence that [Sawyers] was intoxicated at the time he committed the instant capital murder. At most, the evidence showed that at some time *after* [Sawyers] killed the decedent, he visited friends who believed he was intoxicated or "high." There

Cir.1992) (holding that *Penry* claim was without merit because evidence did not indicate that defendant suffered from mental impairment at the time of the offense); *Wilkerson v. Collins*, 950 F.2d 1054, 1061 (5th Cir.1992) ("A defendant cannot claim factors exist in his case which are not covered by the Texas special issues unless he has offered proof of those factors at trial.").

Although Sawyers' *Penry* claim was not procedurally barred, it lacks support in the evidence.[14] Therefore, the district court was correct in rejecting it. Sawyers has not demonstrated that the issues raised by his *Penry* claim are debatable among jurists of reason, that a court could resolve those issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *See Barefoot*, 463 U.S. at 893 n. 4, 103 S.Ct. at 3394 n. 4. Therefore, Sawyers' *Penry* claim does not make a substantial showing of the denial of a federal right, and does not justify the issuance of a certificate of probable cause to appeal. *See id.* at 893, 103 S.Ct. at 3394.

**B**

Sawyers argues that the district court erred by refusing to conduct an evidentiary hearing regarding his ineffective assistance claim. We disagree.

Sawyers first raised his ineffective assistance claim in his second state habeas application. He argued that his appointed counsel at trial—Richard Travathan and Doug O'Brien—underestimated the possibility that he would receive the death penalty, and consequently failed to prepare and present an effective defense. Sawyers' brother, sister, and sister-in-law submitted affidavits, stating that O'Brien told them their attendance at trial was unnecessary, because it was unlikely that Sawyers would receive the death penalty. *See* State Habeas Record, Application No. 16,991–02, at 22, 25, 29. Those affidavits also indicated that Sawyers had abused drugs and alcohol since adolescence, and that he had served in the navy. The affiants stated that they would have testified on Sawyers' behalf, if not for O'Brien's advice that their testimony was unnecessary. Sawyers argued that Travathan and O'Brien were ineffective for advising his relatives not to attend the trial, and for failing to present their testimony as to his substance abuse and military service.

O'Brien submitted an affidavit, stating that he never advised members of Sawyers'

---

was no evidence adduced at trial that demonstrated that the instant capital murder was in any way drug-related.
State Habeas Record, Application No. 16,991–02, at 153–54. This finding of fact is entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(d) (1988).

**14.** The district court also reasoned that Sawyers' *Penry* claim was without merit because the jury was able to give proper mitigating effect to any evidence of intoxication via the two special issues. Sawyers concedes that, according to recent decisions of this Court, voluntary intoxication is not the type of mitigating circumstance for which *Penry* requires additional instructions. *See Cordova v. Collins*, 953 F.2d 167, 170 (5th Cir.) ("[V]oluntary intoxication is not the kind of 'uniquely severe permanent handicap[ ] with which the defendant was burdened through no fault of his own' that requires a special instruction to ensure that the mitigating effect of such evidence finds expression in the jury's sentencing decision." (quoting *Graham v. Collins*, 950 F.2d 1009, 1029 (5th Cir.1992), *aff'd on other grounds*, — U.S. —, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993))), *cert. denied*, — U.S.

—, 112 S.Ct. 959, 117 L.Ed.2d 125 (1992); *Barnard v. Collins*, 958 F.2d 634, 639 (5th Cir. 1992) (same) (citing *Cordova* and *Graham*). However, Sawyers anticipated the reversal, by the Supreme Court, of the decision which formed the basis for *Cordova* and *Barnard*— *Graham v. Collins*, 950 F.2d 1009 (5th Cir. 1992)—and argued that this Court would find it necessary to reconsider its decisions in *Barnard* and *Cordova* following the reversal of *Graham*. *See* Brief for Sawyers at 7. The Supreme Court has now affirmed our denial of habeas relief in *Graham*, on the grounds that the relief sought by Graham would have required the promulgation of a new rule of law on review of a state prisoner's federal habeas petition, which is prohibited by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Graham v. Collins*, — U.S. at —, 113 S.Ct. at 895. Because we affirm the district court's denial of habeas relief on the grounds that no evidence showed Sawyers to be intoxicated at the time of the offense, we do not reach Sawyers' contention as to the (continuing) vitality of *Cordova* and *Barnard*, and we do not decide whether Sawyers' *Penry* claim, like Graham's, calls for a new rule as defined by *Teague*.

family not to attend the trial, and never told them that it was unlikely that Sawyers would receive the death penalty. *See id.* at 75. O'Brien also testified that he made a tactical decision not to offer evidence of Sawyers' substance abuse and navy service. O'Brien thought that the evidence of substance abuse would be regarded by the jury as aggravating, rather than mitigating; and he chose not to introduce evidence of Sawyers' military service because Sawyers was discharged from the navy on account of "fraudulent enlistment concerning a prior marijuana charge." *See id.* Travathan also submitted an affidavit, in which he stated that, to the extent that he had personal knowledge, O'Brien's account of the facts was true. *See id.* at 78.

After considering the affidavits, the trial court made findings of fact to the effect that (a) Sawyers' counsel did not underestimate the likelihood that Sawyers would receive the death penalty; (b) O'Brien never told Sawyers' relatives that it was unlikely Sawyers would receive the death penalty, or that their attendance at trial would be unnecessary; and to the extent Saw-

yers' relatives' affidavits indicated otherwise, those affidavits lacked credibility; (c) Sawyers' counsel decided not to introduce evidence of Sawyers' past drug abuse, because counsel reasonably believed that that evidence would not be considered mitigating by a jury; and (d) Sawyers' counsel decided not to introduce evidence of Sawyers' naval service, because Sawyers had been discharged for fraudulent enlistment regarding a prior marijuana charge. *See id.* at 150–52.

After the Court of Criminal Appeals denied Sawyers' state habeas application, Sawyers presented his ineffective assistance claim in his federal habeas petition. The district court presumed that the trial court's findings of fact were correct, and concluded that "Sawyers unquestionably received effective assistance of counsel." *See* Record on Appeal at 71–72.

■ Under 28 U.S.C. § 2254(d) (1988), federal courts acting on a state prisoner's petition for a writ of habeas corpus must generally accord a presumption of correctness to state court findings of fact.[15] How-

---

15. Section 2254(d) provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;
(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
(3) that the material facts were not adequately developed at the State court hearing;
(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;
(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.
28 U.S.C. § 2254(d) (1988).

ever, Sawyers argues that the district court should have conducted an evidentiary hearing, rather than presuming the correctness of the trial court's findings, because the state court relied entirely on the affidavits of Sawyers' attorneys and Sawyers' relatives in making its findings. According to Sawyers, the state court's findings were not entitled to a presumption of correctness, because "the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; ... the material facts were not adequately developed at the state court hearing; ... [and] the state [trial court] did not afford [him] a full and fair hearing." *See* Brief for Sawyers at 11 (citing *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), *overruled on other grounds by Keeney v. Tamayo–Reyes*, —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)).

Sawyers claims that the material facts were not adequately developed at the state habeas proceeding because the allegations of his relatives—that O'Brien advised them not to attend Sawyers' trial—remain uncontested and unrebutted. *See* Brief for Sawyers at 11. Although O'Brien responded to those allegations in his affidavit, Sawyers argues that O'Brien offered only a qualified response, which left the issue unresolved.[16] We disagree. Sawyers' relatives

clearly alleged that O'Brien advised them not to attend the trial, and that he so advised them because Sawyers probably would not receive the death penalty.[17] O'Brien's affidavit soundly refutes that allegation.[18] Consequently, no material issues of fact were left unresolved by the affidavits.

 Sawyers also suggests that an evidentiary hearing was required because the factfinding procedure undertaken by the trial court—relying exclusively on affidavits—was not adequate to afford Sawyers a full and fair hearing. We disagree. In *May v. Collins*, 955 F.2d 299 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1925, 118 L.Ed.2d 533 (1992), we rejected the proposition that "a federal court [on habeas review] *must* hold a hearing if the state court decided factual issues without the benefit of live testimony." *See id.* at 310.[19] We held that "it is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual disputes underlying the petitioner's claim." *See id.* at 312. In *May* the state court judge who conducted the "paper hearing" had also presided over the trial and witnessed the demeanor of the affiants, and therefore had "formed a view as to their veracity." *See id.* at 314. Consequently, we concluded that the state court's findings of fact, though made on the basis of

16. O'Brien's affidavit says that Sawyers' relatives "were never told by me either directly or indirectly that their attendance at trial was unnecessary because it was very unlikely that he would receive a death sentence." *See* State Habeas Record, Application No. 16,991–02, at 75. According to Sawyers, this statement fails to indicate that O'Brien never advised Sawyers' family not to attend the trial; it merely indicates that he never so advised them *because Sawyers was unlikely to receive the death penalty.*

17. *See id.* at 29 (affidavit of Sawyers' sister) ("John's trial lawyer, Mr. O'Brien, told our family that there was no reason to attend the trial, or to testify on his behalf. He assured us that it was very unlikely that John would receive a death sentence, and therefore there was no reason to come to Texas."); *id.* at 22, 25 (affidavits of Sawyers' brother and sister-in-law) (same).

18. *See id.* at 75 ("I never stated that it was unlikely that Mr. Sawyers would receive the death penalty.... [Sawyers' brother, sister,

and sister-in-law] were never told by me either directly or indirectly that their attendance at trial was unnecessary because it was very unlikely that he would receive a death sentence.").

19. This Court has "dealt on several occasions with factfinding by affidavit at the state trial court level, and each time we have found the procedures adequate for the purpose of § 2254(d)—even where the factual conclusions depended on credibility determinations." *May*, 955 F.2d at 313; *see also Buxton v. Lynaugh*, 879 F.2d 140, 147 (5th Cir.1989) (holding that state court findings of fact on the basis of affidavits alone were entitled to presumption of correctness under 28 U.S.C. § 2254(d)), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir.1987) (same); *Smith v. Estelle*, 711 F.2d 677, 681–82 (5th Cir.1983) (same), *cert. denied*, 466 U.S. 906, 104 S.Ct. 1685, 80 L.Ed.2d 159 (1984).

affidavits alone, were entitled to the section 2254(d) presumption of correctness. *See id.* at 314–15.

As in *May,* the judge who presided over Sawyers' state habeas proceeding was in an excellent position to assess the credibility of the conflicting affidavits. Judge Joe Kegans presided over Sawyers' trial, and was therefore familiar with Sawyers' attorneys and the facts of the case. Furthermore, Judge Kegans could observe, on the face of Sawyers' relatives' affidavits, indicia that those affidavits lacked credibility. Sawyers' relatives' affidavits contain identical accounts of O'Brien's alleged advice not to testify at trial.[20] Consequently, it is apparent that those affidavits were not prepared by the affiants themselves, and do not represent a spontaneous, unrehearsed account of the facts. Furthermore, none of Sawyers' relatives claims that he or she was told personally not to attend Sawyers' trial. All three stated, "Mr. O'Brien told *our family* that there was no reason to attend the trial." *See* State Habeas Record, Application No. 16,991–02, at 22, 25, 29 (emphasis added). As a result, it is not clear from the affidavits that any of the individual affiants had a conversation with O'Brien. At most, these affidavits appear to be mere hearsay reports of what was said to other family members.

Because Judge Kegans presided over Sawyers' trial, and because Sawyers' relatives' affidavits lacked indicia of credibility, we conclude that Judge Kegans was well-equipped to assess the credibility of the conflicting affidavits. Therefore, in light of *May,*[21] we hold that (1) the trial court's review of the affidavits afforded Sawyers a full and fair hearing, which resolved all material issues of fact; (2) the trial court's findings of fact were entitled to a presumption of correctness; and (3) no evidentiary hearing was required in federal district court.

■ Sawyers' attorneys made a tactical decision not to present evidence of Sawyers' substance abuse and naval service.[22] The district court concluded that that decision did not amount to ineffective assistance of counsel. *See* Record on Appeal at 71 ("Sawyers unquestionably received effective assistance of counsel."). We agree.

The Supreme Court has prescribed the standard for judging ineffective assistance claims:

[A] court deciding an … ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case … [and] determine whether, in light of all the circum-

---

**20.** *See* State Habeas Record, Application No. 16,991–02, at 22 (affidavit of Sawyers' brother) ("John's trial lawyer, Mr. O'Brien, told our family that there was no reason to attend the trial, or to testify on his behalf. He assured us that it was very unlikely that John would receive a death sentence, and therefore there was no reason to come to Texas. If I had known that *my* testimony could have helped to show John's good points, and might have helped during the sentencing phase of the trial, I absolutely would have gone to Texas to testify."); *id.* at 25, 29 (affidavits of Sawyers' sister-in-law and sister) (same).

**21.** Sawyers argues that *May* is distinguishable because the state court judge in *May* had personally observed the demeanor of both affiants, whereas here the trial judge was familiar only with Travathan and O'Brien. We disagree. In this case and in *May,* the trial court had ample basis for assessing the credibility of the affiants, even though it relied here upon indicators of credibility other than the affiants' demeanor. *May* does not stand for the proposition that findings of fact made on the basis of a paper

hearing are entitled to a presumption of correctness only when the judge has observed the demeanor of all of the affiants. To the contrary, we held in *May* that "it is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual disputes underlying the petitioner's claims." *May,* 955 F.2d at 312. For the reasons stated in this opinion, we conclude that the paper hearing conducted by Judge Kegans was appropriate to the resolution of the disputed facts.

**22.** The trial court found that

[D]efense counsel consciously refrained from introducing evidence of [Sawyers'] past drug abuse since they reasonably believed that general evidence of [Sawyers'] past drug abuse would not be considered mitigating by a jury…. Defense counsel made a conscious decision not to introduce evidence of [Sawyers'] naval service since [Sawyers] had been discharged because of fraudulent enlistment regarding a prior marijuana charge.

State Habeas Record, Application No. 16,991–02, at 152.

stances, the identified acts or omissions were outside the wide range of professionally competent assistance.... [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Sawyers' attorneys reasonably concluded that evidence of Sawyers' drug abuse and fraudulent enlistment in the navy might be more harmful than helpful at sentencing. Such instances of illegal conduct suggest that Sawyers lacks either the will or the ability to conform his behavior to the requirements of the law. Consequently, counsel's decision not to introduce that evidence was probably wise, and certainly did not fall outside the wide range of professionally competent legal assistance. *See id.* at 699, 104 S.Ct. at 2071 (holding that defendant was not denied effective assistance of counsel where counsel declined to call character witnesses, because it could be reasonably surmised that character evidence would be of little help); *Prejean v. Smith,* 889 F.2d 1391, 1398–99 (5th Cir.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1836, 108 L.Ed.2d 964 (1990) (holding that defendant was not denied effective assistance because of attorney's decision not to call character witnesses, where cross-examination would have revealed unfavorable facts about defendant's criminal history); *Moore v. Maggio,* 740 F.2d 308, 316 (5th Cir.1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985) (same). Therefore, Sawyers' ineffective assistance claim was properly rejected by the district court.

### III

Neither of Sawyers' grounds for relief presents issues that are debatable among jurists of reason, that could be resolved differently than they already have been, or that deserve encouragement to proceed further. *See Barefoot,* 463 U.S. at 893 n. 4, 103 S.Ct. at 3394 n. 4. Consequently, Sawyers has not made a substantial showing of the denial of a federal right. Sawyers' application for a certificate of probable cause to appeal is therefore DENIED, and the stay of execution is VACATED.[23]

---

**23.** Sawyers also applies to this Court for certification that his appeal is taken in good faith, pursuant to Fed.R.App.P. 24(a). *See* Application for Certificate of Probable Cause to Appeal at 1. Fed.R.App.P. 24(a) authorizes such an application to the Court of Appeals "[i]f a motion for leave to proceed on appeal in forma pauperis is denied by the district court, or if the district court shall certify that the appeal is not taken in good faith or shall find that the party is otherwise not entitled to proceed in forma pauperis." *See* Fed.R.App.P. 24(a). If the district court grants the party's motion for leave to proceed

on appeal in forma pauperis, "the party may proceed without further application to the court of appeals." *See id.; McGann v. United States,* 362 U.S. 309, 80 S.Ct. 725, 4 L.Ed.2d 734 (1960) ("[I]nasmuch as the petitioner had been granted leave to proceed *in forma pauperis* by the District Court, the application to the Court of Appeals was unnecessary."). Because the district court granted Sawyers leave to proceed on appeal in forma pauperis, *see* Record on Appeal at 69, Sawyers' motion for certificate of good faith is not properly before this Court and will not be addressed.